Jacques v Goodson (2024 NY Slip Op 51889(U))

[*1]

Jacques v Goodson

2024 NY Slip Op 51889(U)

Decided on June 18, 2024

County Court, Saratoga County

Schopf, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through December 31, 2025; it will not be published in the printed Official Reports.

Decided on June 18, 2024
County Court, Saratoga County

Jordan Jacques, Plaintiff,

againstPhil Goodson, Defendant.

Index No. 2023679

John Dowd, Esq.Dreyer Boyajian, LLPAttorney for the Plaintiff75 Columbia StreetAlbany, New York 12210Mr. Phil Goodson, Sr.Defendant, pro se

Jonathan G. Schopf, J.

Plaintiff, Jordan Jacques, brought an action against defendant alleging damages of $9,720.00 due to defendant's breach of contract, negligence, and breaches of warranty concerning a remodeling job of the plaintiff's bathroom which was to be performed by the defendant. Defendant submitted a timely Answer to the Complaint and the Court will accept the Answer and the affirmative defenses contained therein as a general denial to the claims of the plaintiff and a counterclaim for payment on the outstanding sums contained within the subject contract. The parties appeared on May 30, 2024 for a trial of the within matter. Following which, the Court makes the following findings of fact and conclusions of law.
The parties, both of whom are licensed home inspectors by trade met at a home inspection instructional course and became friends prior to the occurrences which are the subject of the instant lawsuit. They entered into a written and valid contract via text (SMS) message on or about October 29, 2022 after the defendant sent a detailed text message of the work that he proposed to perform at the residence owned by the plaintiff (P Ex. 1 P-1000006). The contract was for the remodel of the plaintiff's bathroom. The total contract price for the gut and remodel [*2]bathroom renovation was $12,000.00 [FN1]
to be paid in 1/3 installments in addition to materials, which plaintiff agreed to purchase. Although there is no affirmative text response consenting to the terms as drafted by the defendant, the parties testified that they so agreed and there is no dispute as to the existence of the contract.
The defendant began work on the project on or about November 2, 2022 at which time the plaintiff provided the defendant with a check in the amount of $6,000.00. During the course of the demolition portion of the project, on or about November 5, 2022 the water supply line from the disconnected toilet began to leak. Unfortunately, the main shutoff valve at the house supply was broken and the water was unable to be shut off. This caused damage to the ceiling of the dining room / kitchen area below the bathroom. Although it was not required under the terms of the contract, the defendant paid out of pocket for an on-call plumbing repair to the main house valve. The amount paid was $457.75 and the defendant verbally told the plaintiff that he would cover this cost as a good will gesture. In addition to this payment, the defendant testified that he hired a subcontractor to perform the demolition work at a cost to defendant of $1,090.00 and a second sub-contractor for the floor tile at a cost to defendant of $900.00.
On November 12, 2022, November 23, 2022, and December 7, 2022 the plaintiff transmitted funds in the amount of $1,577.00, $903.00, and $1,240.00 for a total of $3,720.00 to the defendant as payment for materials (P Ex. 3). These are supported by receipts received into evidence as plaintiff's Exhibit 4. Such receipts total $3,671.15, a difference of $48.85, for which the plaintiff overpaid.
On December 19, 2022, the plaintiff ordered the defendant off of the job site via a text message (P Ex. 13) citing that "the tile work is really bad in locations and this is taking too long..." Plaintiff then demanded a refund of $9,750.00. Defendant refused to refund the money demanded and made his own demand for payment in full of the remaining balance due him under the contract of $6,000.00 via a text message on December 21, 2022.
The plaintiff testified that he took photos of the progress of the work. These photos were admitted into evidence as Plaintiff's Exhibits 6, 9 and 15. He further testified that he observed the job on a day that the subcontractor was installing tile, when he came back to the home later in the day, the tiles were falling off the walls and there was an observation of minimal thin-set adhesive in place. He also observed that the floor tiling was "lipped" (uneven), that the shower pan was not correct, was out of plumb and that the shower niches were out of square. When these issues were discussed with the defendant, it was agreed that the work would be re-done and the subcontractor [FN2]
who installed that tile would not be involved. The defendant removed and replaced the wall tile in the shower but did not renovate the floor tiling, asserting that this flooring was of sufficient quality and that any issues were aesthetic in nature and did not affect the functionality of the tile.
The plaintiff was still not happy with the quality of work, and he testified that there were numerous defects as he described when shown photographs number 1, 2, 3, 4, 5, 7, 10, 11, 15, 17,20, 21, 23, 26, 30, 33, 38, 43, 44, and 53 of Plaintiff's Exhibit 15. Due to these defects as-[*3]well-as the rate at which the work was being performed, the plaintiff elected to order the defendant off of the job and terminate the contract. Thereafter, the defendant arrived at the residence on December 20, 2022, picked up his tools and left the job site.
The defendant was permitted to testify on direct in the narrative. He testified in a truthful and honest manner throughout the trial. Defendant's legal position and defense, in essence, is that the plaintiff prevented him from finishing the job and that had he been able to finish, the end product would have been acceptable. Defendant avers that he should have had an opportunity to complete the project and that the plaintiff is not entitled to a refund of any money for labor or materials.
He also testified that many of the plaintiff's issues with the work were aesthetic in nature and that the workmanship was acceptable. The testimony given by defendant was that he is essentially a "do-it-yourself" handyman generalist who has completed a variety of tiling and remodeling projects for other satisfied customers in the past; he is not licensed or certified to install tile [FN3]
; that he continued to remind the plaintiff that the project would take longer, especially after the termination of the subcontractors; and that he had no idea the plaintiff was dissatisfied with the re-installation of the wall tile until he was terminated. He also testified that he believed the project to be at the 25-40% complete stage when he was terminated.
Plaintiff's Expert
Plaintiff called Chad Fabry as an expert witness who was qualified as such on stipulation of the parties. Mr. Fabry has an extensive background as it relates to floor tiling installation, structural systems and general construction methods. His qualifications are set forth in his disclosure admitted as part of Plaintiff's Exhibit 7 and his testimony before the Court. The Court finds him qualified and credible. Indeed, even the defendant conceded that he could not dispute Mr. Fabry's qualifications or his conclusions.
Mr. Fabry personally inspected the project approximately six (6) months after the defendant was ordered off the job. Mr. Fabry's report and testimony based on such inspection made it clear that the work performed was not completed in a workmanlike manner. His conclusion was that the project, despite in his estimation being 50-60% complete, was so fundamentally flawed that it could not be repaired and that it would need to be entirely re-gutted and rebuilt in order to have the project done correctly. It was his opinion that likely nothing would be salvageable. He observed tile lippage, imperfect grout joints, excess shower pan slope, flawed layout, lack of symmetry, out of square construction, and incorrectly installed drywall all of which is depicted in his report and the accompanying photographs. He engaged in destructive testing of the tile which led him to the conclusion that the tile was not properly installed in that it lacked proper adhesion. The details of the substantial defects in the work which he testified to are too numerous to list and are all contained within his report. His testimony summed up his report by stating that "every aspect of the installation was flawed".
The defendant did not call an expert in support of his defenses or claims.

Findings

In order to establish a breach of contract, plaintiff must prove (1) the existence of a contract, (2) performance by plaintiff, (3) defendant's failure to perform, and (4) damages to the [*4]plaintiff (see WorldCom, Inc. v. Sandoval, 182 Misc 2d 1021 [Sup. Ct. NY City 1999]).
As a threshold question, the Court must determine if the termination of the contract between the parties was proper. The propriety of a termination of a construction contract turns on findings which must be ultimately made by the trier of facts. This is so as the termination of a construction contract for alleged default in performance by the contractor is a serious step which an owner is entitled to take only under limited circumstances. In the first place, the contractor may be terminated for default only if the contractor is in material breach of the contract, which means that the contractor has failed to perform the contract in ways which are major and substantial and not minor or trivial. Secondly, the contractor may not be terminated for default if the owner itself is in material breach of the contract at the time of termination. In other words, the owner cannot terminate the contractor's performance for default if the owner itself has failed to perform its part of the bargain (4G NY Prac., Commercial Litigation in New York State Courts §149:21 [5th Ed.] [citations omitted]).
Based upon the testimony elicited at trial from the plaintiff and the uncontroverted opinion of the plaintiff's expert, this Court finds that the plaintiff met his burden to establish that the defendant not only breached his contract with the plaintiff, incurring damages, but established that he properly terminated the contract for cause. Plaintiff was current with his payments to the defendant at the time of the termination, and the proof shows that the failure to properly remodel the bathroom was significant and to redo the work would be a substantial undertaking, requiring the bathroom to be demolished back to the studs. As the plaintiff has proven his case, the Court must now determine the amount of damages that the plaintiff should be awarded.
The purpose of awarding damages in breach of contract cases is to place the nonbreaching party in as good a position as it would have been in had the contract been performed. When a contract is silent on the issue of damages, the damages for breach of contract are usually the losses sustained and the gains prevented at the time and place of breach. An aggrieved party may recover damages that are the natural and probable consequence of the breach if the damages were reasonably foreseeable, or contemplated, by the parties at the time of contract formation and are capable of measurement with reasonable certainty and are not merely speculative (4C NY Prac., Commercial Litigation in New York State Courts §89:38 [5th Ed.] [citations omitted]).
Plaintiff has submitted proof of damages establishing that he paid the sum of $3,720.00 to the defendant as and for reimbursement of material costs and the sum of $6,000.00 for labor. This totals $9,720.00 in damages for the breach by the defendant. In reviewing the receipts submitted into evidence for the materials, it is noted that the bulk of the materials purchased were for consumable construction items and for items that would be destroyed in re-gutting the bathroom, such as tile and grout. The only reusable item would appear to be a toilet which was purchased for $179.00 with tax at the rate of seven percent (7%) for a total of $191.53. Presumably the toilet could be re-installed in the repaired bathroom and as such, should not be attributed to the defendant.
Likewise, the defendant was under no contractual obligation to pay out of pocket for an on-call plumbing repair to the main house water shutoff valve which would not work. There was no testimony which would have attributed the failure of the main valve to the defendant. The testimony was not clear on this issue of the leaking toilet (perhaps due to plaintiff not seeking damages for the first-floor ceiling), but it appears that defendant paid the $457.75 to fix the main [*5]valve to stop the water from leaking at the toilet valve. There was no proof submitted as to the cause of the leak at the toilet valve, whether by negligence of the defendant or due to defect/ age of the valve. As such, the defendant is entitled to an offset of $457.75 for the emergency plumbing repair for which the defendant was under no contractual obligation to perform. Thus, defendant is entitled to offsets of $649.28 to the plaintiff's incurred damages of $9,720.00 for a total judgment in favor of the plaintiff of $9,070.72.
The defendant testified that he hired a subcontractor to perform the demolition work at a cost to defendant of $1,090.00 and a second sub-contractor for the floor tile at a cost to defendant of $900.00. Although the defendant did not bring a claim against the sub-contractors who worked on the project or installed the tile, it would appear that the defendant may have the ability to pursue a separate claim against the subcontractors to the extent that they contributed to the loss.
It should be noted that in addition to the losses directly sustained, when the contractor is properly terminated by the owner for material breach of contract, the owner is entitled to recover from the contractor all additional costs which the owner necessarily incurs in order to arrange completion of the contract by others. (Polo Electric Corp. v. New York Law School, AD3d 419 [2014 1st Dep't.]). Here the plaintiff did not put forth any proof on any further damages other than those directly sustained. The plaintiff testified that the work was never completed and the house was then sold as-is. The plaintiff testified that he took a $20,000 to $40,000 loss due to this fact, however, as with the alleged damages to the ceiling of the home, no admissible proof to this fact was submitted and plaintiff testified that he was not seeking such damages at trial.
In light of these conclusions, it is not necessary to discuss the plaintiff's remaining causes of action. Wherefore, it is hereby
ORDERED AND ADJUDGED, plaintiff's request for pre-judgment interest is denied.
ORDERED AND ADJUDGED, that the plaintiff, Jordan Jacques of XX, Clifton Park, New York 12065 be and hereby is awarded a total judgment against the defendant, Phillip "Phil" E. Goodson of 
XX, Ballston Spa, New York 12020 in the amount of Nine Thousand Seventy Dollars and 00/72 ($9,070.72).
This constitutes the final Decision and Judgment of this Court. The Court is returning all exhibits admitted at trial to the Clerk of the Court, plaintiff to submit Bill of Costs. The Court is hereby providing the original Decision and Order to the Plaintiff for filing and entry with the County Clerk. 
June 18, 2024HON. JONATHAN G. SCHOPFACTING COUNTY COURT JUDGE

Footnotes

Footnote 1:The contract also included some extra additional items of work which, apparently were never performed, and are not at issue.

Footnote 2:This subcontractor was Shawn McCarthy. Defendant testified he paid Mr. McCarthy $900.00 to install the floor tile.

Footnote 3:The testimony of plaintiff's expert concurred that no such license or certification is required, but that standards of local and NYS building codes should be met.